[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE STAY
Plaintiff brings this action as an appeal from a decision of the defendant Freedom of Information Commission (FOIC) and now asks a stay of the enforcement of that decision. CT Page 6348-D The other defendants are Marc S. Ryan (Ryan), John H. Cassidy, Jr. (Cassidy) and Waterbury Republican-American (Newspaper).
Plaintiff is the exclusive bargaining representative for teachers employed by defendant Waterbury Board of Education (Board).
By letter filed with FOIC on May 26, 1992, defendants Ryan, Craig and the Newspaper claimed violations of the Freedom of Information Act, Conn. Gen. Stats. 1-21, (FOIA) by being excluded from the Board's April 29 and May 6, 1992 meetings, and by improper notice of such meetings. That claim was heard as a contested case (Docket #FIC92-175) by defendant FOIC Commissioner Deane C. Avery, as hearing officer, on November 24, 1992. Plaintiff sought and was granted party status by defendant FOIC in that case on November 24, 1992.
The "meetings" which were the subject of that claim were grievance hearings under the existing collective bargaining agreement between plaintiff and the Board, which plaintiff claimed, before FOIC, were "strategy or negotiations with respect to collective bargaining" and were therefore not meetings subject to the FOIA. Plaintiff neither claimed nor produced evidence that these meetings were negotiations to revise the existing Agreement. CT Page 6348-E
On March 24, 1993, Commissioner Avery issued a proposed finding and decision in Docket #FIC 92-175, which was adopted by defendant FOIC on April 28, 1993 and mailed to the parties on April 30, 1993. FOIC stayed enforcement of such decision until May 12, 1993.
According to that final decision, the April 29 and May 6, 1992 grievance heatings before the Board were meetings subject to the requirements of the FOIA.
Plaintiff claims it has been prejudiced by the decision because the decision is
"a. in violation of statutory provisions, including C.G.S.1-18a(b);
b. in excess of the statutory authority of the agency;
 c. clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; and/or
 d. arbitrary or capricious or characterized by abuse of discretion of [sic] clearly unwarranted exercise of discretion."
Plaintiff also alleges aggrievement and that it has exhausted all CT Page 6348-F administrative remedies available within FOIC.
The decision reads as follows:
"The above-captioned matter was heard as a contested case on November 24, 1992, at which time the complainants and the respondent appeared and presented testimony, exhibits and argument on the complaint. The Waterbury teachers' association was made a party to the case upon motion to the hearing officer.
After consideration of the entire record, the following facts are found and conclusions of law are reached:
1. The respondent [Waterbury Board of Education Committee on Grievances] is a public agency within the meaning of 1-18a(a), G.S.
2. By letter filed with this Commission on May 26, 1992, the complainants [Ryan, Craig and the Newspaper] alleged that the respondent violated the provisions of the FOI Act by excluding them from its April 29 and May 6, 1992 meetings. The complainants also alleged that those two meetings were not properly noticed.
3. It is found that the respondent met on April 29 and May 6, 1992 without filing notices pursuant to 1-21(a), G.S. so as to CT Page 6348-G identify the matters to be discussed. The respondent also denied access to those sessions to the complainants.
4. The respondent claims that the sessions in question are not public meetings within the meaning of 1-18a(b), G.S., but rather consisted of strategy or negotiations with respect to collective bargaining.
5. It is found that the respondent discussed certain grievances during the sessions at issue. Grievances discussed by the respondent generally include those filed by individuals as well as by classes, such as teachers' associations.
6. It is found that when the respondent refers to its grievances, it identifies them by numbers without the use of names or subject matter, and that this practice was in fact employed with respect to its April 29 and May 6, 1992 sessions.
7. At the hearing into this matter, the respondent claimed that the identity or subject matter of grievances is not public information but rather consists of strategy or negotiations with respect collective bargaining.
8. It is found that at the April and May sessions et issue, the respondent's discussions included inquiries of which articles of CT Page 6348-H the collective bargaining contract may have been violated in the grievances discussed. The respondent also called witnesses to present testimony and evidence concerning those grievances at issue.
9. It is found that at the times of the April and May sessions at issue, a collective bargaining contract was already in effect.
10. It is concluded that at the April and May sessions at issue, the respondent discussed matters other than strategy or negotiation with respect to collective bargaining, and did so clearly when receiving testimony and evidence from witnesses.
11. At the hearing into this matter, the respondent failed to prove that the mere identification of the parties to grievances or the subject matter of grievances under investigation would constitute strategy or negotiations with respect to collective bargaining within the meaning of 1-18a(b). G.S.
12. It is therefore concluded that the April 29 and May 6, 1992 sessions of the respondent were public meetings within the meaning of 1-18a(b), G.S.
13. It is further concluded that the respondent violated the provisions of 1-21(a), G.S., by failing to file notices of its April 29 CT Page 6348-I and May 6, 1992 meetings, so as to identify the matters to be discussed and by excluding the complainants from those meetings.
The following order by the Commission is hereby recommended on the basis of the record concerning the above-captioned complaint.
1. The respondent shall henceforth strictly comply with the provisions of 1-21(a), G.S.
Approved by Order of the Freedom of Information Commission at its regular meeting of April 28, 1993."
Law
The court treats an application for a stay under C.G.S.4-183(f) in the same manner as a motion for temporary injunction. Thus, in order to prevail the applicant must prove it has no adequate remedy at law, it will suffer irreparable injury if the stay is denied and it will be likely to prevail upon final judgment here. In addition the court must balance the equities.
C.G.S. 1-18a(b) is as follows:
(b) "Meeting" means any hearing or other proceeding of a CT Page 6348-J public agency, any convening or assembly of a quorum of a multimember public agency, and any communication by or to a quorum of a multimember public agency, whether in person or by means of electronic equipment, to discuss or act upon a matter over which the public agency has supervision, control, jurisdiction or advisory power. "Meeting" shall not include: Any meeting of a personnel search committee for executive level employment candidates; any chance meeting, or a social meeting neither planned nor intended for the purpose of discussing matters relating to official business; strategy or negotiations with respect to collective bargaining; a caucus of members of a single political party notwithstanding that such members also constitute a quorum of a public agency; and administrative or staff meeting of a single-member public agency; and communication limited to notice of meetings of any public agency or the agendas thereof. "Caucus" means a convening or assembly of the enrolled members of a single political party who are members of a public agency within the state or a political subdivision.
The exemption in regard to disclosure of strategy and negotiations is reinforced by C.G.S. 1-19(b) which provides in pertinent part as follows:
"(b) Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, CT Page 6348-K shall be construed to require disclosure of. . .; (9) records, reports and statements of strategy or negotiations with respect to collective bargaining."
Plaintiff argues that its collective bargaining is never-ending; that the fact that there is an existing agreement does not mean it is not engaged in trying to bargain for a future agreement.
It is true that in a sense collective bargaining is "on-going"just as it is true that a lawyer's speech, dress and life-style affect his ability to persuade and thus his success in legal negotiations. When our statutes speak of negotiations they do not contemplate the ephemera and nuances that may act upon bargaining perceptions and positions. Rather, they speak to demands, withdrawals of demands, positions on issues and amendments of those positions.
When we look at various statutes affecting labor in Connecticut we get a clear impression of how our legislature perceives negotiations. In C.G.S. 55-276a we see that very specific deadlines are required for commencement of negotiations and that time periods, "reasonable" and specific, are outlined for continuation of negotiations.
The plaintiff's rights as the exclusive bargaining unit allows it "to negotiate agreements covering all employees in the unit." CT Page 6348-L C.G.S. 7-468(c). That right is subject to the temporal limits on negotiations as expressed in C.G.S. 4-473b.[1] Although many successful executives consider collective bargaining to be a perpetual effort for our purposes they are limited in time.
The statute which allows municipal employees to collectively bargain seems to include "the negotiation of an agreement" within the definition "to bargain collectively", C.G.S. 7-470(c), whereas C.G.S. 1-18a(b) refers to "negotiations with respect to collective bargaining." This different usage leads the court to conclude that the latter statute is referring to negotiations with respect to a contract — an agreement.
In C.G.S. 10-153e(d) the legislature defines "to negotiate in good faith" to be the
 "performance of the mutual obligation of the board of education or its representatives or agents and the organization designated or elected as the exclusive representative for the appropriate unit to meet at reasonable times, including meetings appropriately related to the budget-making process, and to participate actively so as to indicate a present intention to reach agreement with respect to salaries, hours and other conditions of employment, or the negotiation of an agreement, or any question arising thereunder and the execution of a written CT Page 6348-M contract incorporating any agreement reached if requested by either party."
Finally, Ballentine's Law Dictionary, Third Edition, gives us the following:
 "negotiate. to effect a negotiation. To attempt to effect the negotiation of a contract negotiation.
 "negotiation of contract. The carrying on of a correspondence by letters and telegrams or the conducting of conversations in attempting to arrive at an agreement and contract."
 "negotiator. One who negotiates for the purpose of entering into a contract or agreement. . ."
Neither C.G.S. 10-153e(d) nor Ballentine's describe what was happening at the two meetings with which we are concerned.
Strategy is defined as "1. The science and art of employing the armed strength of a belligerent to secure the objects of a war." Websters New International Dictionary Second Edition. Clausewitz says, "The strategic elements that affect the use of engagements may be classified into various types: moral, physical, mathematical, geographical, and statistical." Carl Von Clausewitz, On CT Page 6348-N War, edited and translated by Michael Howard and Peter Paret 1989.[2] Obviously the confrontations, discussions, maneuverings and planning by each side in an effort to reach accord as to all the terms of a collective bargaining agreement is not the equivalent of war. Unfortunately most definitions of strategy are derived from military science and these are not too helpful for use in thinking about civilian activities and relationships. The court must try to define what strategy means as used in our statutes by our legislature.[3]
In our relevant statutes the words "negotiation" and "strategy" are used together. As used, each is expected to occur in form of meeting. Negotiation suggests that the adversary will be present. One cannot negotiate with oneself. But strategy, regardless of whose definition we use, involves planning by one side only. "Strategy[,] careful, cleverly devised plan or series of maneuvers for attaining a specific goal or result." "Word Menu", Stephen Glazier, 1992.
These two meetings did not include negotiations with respect to collective bargaining, or strategy.
Motion denied.